IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge John L. Kane**

Civil Action No. **04-cv-00856-JLK-CBS**

**FIRST DATA CORPORATION, a Delaware corporation,**

      Plaintiff,

v.

**ARPAD KONYA, an individual**
**ARPAD KONYA, SR., as Legal Representative of Arpad Konya;**
**JOHN DOE, an individual; and**
**HYPER-CASH INCORPORATED, a New York corporation**,

      Defendants.

---

## ORDER ADOPTING RECOMMENDATION OF MAGISTRATE JUDGE

---

**Kane, J.**

This matter is before me on Plaintiff First Data Corporation's Objections to the

written Recommendations of the Magistrate Judge Regarding (1) Plaintiff's Motion in

Limine to Exclude Testimony of Dr. Zoltan Ziegler (Doc. 75) and (2) First Data's Motion

for Summary Judgment (Doc. 72).[1]  Specifically, First Data objects to the Magistrate

Judge's determination that Dr. Ziegler's expert opinions regarding the younger Konya's

inability to understand the nature and consequences of his actions in selling certain

intellectual property to First Data are admissible under F.R.E. 702 and *Daubert v. Merrell*

---

[1]       There is no objection by either side to the Magistrate Judge's recommendation to deny
the senior Konya's Motion for Partial Summary Judgment (Doc. 77), which seeks a declaration that
the Patent Assignment Agreement executed by the younger Konya and First Data was void under
Hungarian Law.

*Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and objects to the Magistrate Judge's

recommendation to deny First Data's Motion for Summary Judgment on the senior

Konya's counterclaim seeking an equitable rescission of the Patent Assignment Agreement.

 

Under 28 U.S.C. § 636(b)(1) and Rule 72(b), Fed. R. Civ. P., my review of the

Magistrate Judge's Recommendations is *de novo* as to any portion to which specific written

objection is made,[2] and I may accept, reject, or modify the Recommendation under that

standard.  I must therefore conduct a plenary review of the briefs and materials considered

by the Magistrate Judge, and reach an independent conclusion on the merits of the

underlying Motions.  I have done so, and ADOPT Magistrate Judge Shaffer's June 26,

2007 Recommendations as Orders of the Court based on my *de novo* determination that:

1.     The gravamen of First Data's objections to the admissibility of Dr. Ziegler's

testimony is that Dr. Ziegler formed his opinions concerning Konya's mental

incapacity without considering "any" of the evidence of Konya's actual competence

during the "relevant" ten-month period leading up to and including the negotiation

and execution of the Patent Assignment Agreement.  First Data contends Ziegler's

failure to consider whether Konya's actions during the formation of the Agreement

in the Fall of 2000 were made during a period of schizophrenic or psychotic lucidity

---

[2]    While there is room to argue the Magistrate's recommendation on the Motion in Limine is a pretrial matter subject to lesser review under 28 U.S.C. § 636(b)(1)(A), I will treat the Magistrate's consideration of the *Daubert* issues raised as having been akin to an evidentiary hearing requiring *de novo* review on any written objection of a party.

2

renders his opinion unreliable and inadmissible under F.R.E. 702.  First Data's argument is attenuated by its artificial constriction of the "relevant" time period to a period of weeks or months sandwiched amid the more than fourteen years Dr. Ziegler has treated Konya for mental illness.  Konya first approached a buyer about his '396 patent in February 28, 2000.  At the time, he had been in and out of psychiatric institutions and under Dr. Ziegler's care for nearly ten years.  In April 2000, six months before Konya assigned his patent to First Data, Konya was admitted and released from a psychiatric hospital under Dr. Ziegler's care.  In May 2000, he was treated again after shooting himself in the head with an air pistol.  It also undisputed that Konya was taking the antipsychotic medication Risperdal at the time he executed the Patent Assignment Agreement in November 2000 and that in 2003, Konya was declared incompetent completely and placed under guardianship by a Hungarian Court.  While it is also undisputed that individuals suffering from delusional psychosis may enjoy periods of competency, the significance of those periods for the overall question of capacity to contract (and, indeed, to Konya is capable of such periods and was, in fact enjoying one during the ten-month run up to the November 2000 transaction) is for the finder of fact to decide in this case with full information developed by counsel through expert testimony.  First Data's complaints that Dr. Ziegler glossed over facts and the nature of the disease process (which First Data claims progresses slowly) is the stuff of cross-examination and rebuttal by qualified experts of First Data's choosing.  It does not warrant exclusion.

3

Similarly unavailing is First Data's suggestion that the Magistrate Judge's Recommendation fails to perform the reliability analysis required under *Daubert* and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999) because it does not evaluate Dr. Ziegler's methodology in light of the "specific" question in this case, i.e., whether Konya *understood* that he was selling his rights in the '396 Patent for $200,000 on November 17, 2000.  Instead, First Data contends Dr. Ziegler opines only that Konya had been and remained mentally ill at the time of the sale, an opinion that is not before the court.  First Data applies F.R.E. 702 and *Daubert's* "reliability" requirement too strictly.  To be admissible under Rule 702 an opinion must be the result of a reliable methodology, reliably applied to the "facts of the case."  *Cook v. Rockwell Int'l Corp.*, 2006 WL 3533049, *3 (D. Colo. 2006)(Kane, J.).  Applicability to the "facts of the case" harkens to the overall requirement that an expert's testimony "assist the trier of fact to understand the evidence or to determine a fact in issue."  F.R.E. 702.  The standard is one of relevance or "fit," not comprehensive precision.  Dr. Ziegler's opinion that Konya was and remained delusional or otherwise mentally ill on November 17, 2000 is relevant to the question of whether he understood the consequences of his actions under the legal standards applicable in this case.

2.   First Data agrees with the Magistrate Judge's recommendation that its Motion for Summary Judgment be granted as to the second and third counts of the Conservator's Counterclaim (for equitable relief in the form of rescission and unjust

4

enrichment, respectively) but objects to his recommendation that the Motion be denied as to the Conservator's first count seeking a declaratory judgment that the Agreement is void and unenforceable as a matter of law.  First Data's objection is three-fold.

First, Plaintiff contends Defendants' evidence is inadequate to overcome the presumption that Konya was mentally competent to enter into the Agreement on November 17, 2000.  The contention is based principally on the asserted inadmissibility of Dr. Ziegler's testimony, which I have rejected, buttressed by an unpersuasively narrow reading of my decision in *Carabello v. Crown Controls Corp.*, 659 F. Supp. 839 (D. Colo. 1987).[3]  Second, First Data cites statements made by both Konyas in their depositions to argue it is entitled to summary judgment on any claim for rescission of the Agreement because neither Konya has the patent

---

[3]      In *Carabello*, I granted summary judgment to defendant on statute of limitations grounds over plaintiff's assertion that the limitations period should be tolled under 1973 C.R.S. § 13-80-127.5 because he was "mentally incompetent" by virtue of his injuries at the time the cause of action accrued.  659 F. Supp. at 841.  Applying the then-applicable Colorado standards for incompetence of "insanity," "mental retardation," "developmentally disabled," "mentally ill" or "gravely disabled," I distinguished between competing expert opinions that plaintiff was "disabled" because of his injuries and the question of whether plaintiff had even alleged sufficient facts to be considered eligible for protection by the umbrella of Colorado's mental incompetency definitions.  *Id.* at 842.  Citing examples of plaintiff's functionality during the relevant time period and finding it "apparent" that plaintiff's assertion of mental incompetency "ha[d] small basis in reality," I rejected plaintiff's argument regarding the tolling of the statute of limitations and granted defendant's motion for summary judgment on that basis.  The Conservator's assertions of Konya's mental incompetency in this case by contrast have ample basis in reality wholly independent of Dr. Ziegler's preferred testimony.  I find *Carabello* distinguishable and decline to apply it to conclude that the Conservator's facts are insufficient to allow the fact finder to conclude Konya was mentally incompetent to enter into the Patent Assignment Agreement on November 17, 2000.

purchase price of $200,000 to return to First Data to effectuate a rescission.  The Conservator amended his testimony to counter that he could, if necessary, come up with the money, and I find First Data's characterization of this as a "blatant attempt by the Conservator to contradict his prior testimony in order to create an issue of fact to survive summary judgment" somewhat facile.  The ability to raise $200,000 to effectuate a judgment in this case is not a "sham" issue of fact within the contemplation of First Data's cited case of *Burns v. Bd. of County Comm'rs of Jackson County*, 330 F.3d 1275, 1282 (10th Cir. 2003) and I reject it.  First Data's request in the alternative that I require the Conservator to place $200,000 in an escrow account in Colorado to assure against the "gross unfairness" that First Data will be required to conduct an "entire trial on the issue of Konya's mental capacity to contract under circumstances where, even if Defendants prevailed, the Court could not rescind the Agreement," may be revisited, on proper motion, should evidence arise contradicting the Conservator's assurance in his second affidavit.

Third, First Data asserts it is entitled to summary judgment on the Conservator's declaratory judgment counterclaim based on Defendants' "unclean hands."  Objection (Doc 95) at p. 19.  In support First Data cites Defendants' generalized "conduct" during this matter, including their "attempt to conceal the existence of more than a half dozen prior cases" involving Konya in Hungary where he unsuccessfully attempted to escape civil and criminal liability on grounds of mental incapacity and his "acknowledged improper motives in initiating this

6

dispute." In my view, the first category of alleged misconduct may actually buttress, rather than detract from, the Conservator's position in this case and in any event, neither assertion is amenable to resolution on a summary judgment standard. Viewing the facts in the light most favorable to the Conservator on his claim for equitable rescission of the November 17, 2000 Agreement, I cannot agree they are susceptible only to the interpretation that the Conservator's "unclean hands" bars his claim.

Based on the foregoing, it is ORDERED that: (1) First Data's Motion to Exclude Dr. Ziegler's testimony (Doc. 75), is DENIED; (2) the Conservator's Motion for Partial Summary Judgment (Doc. 77) is DENIED; and (3) First Data's Motion for Summary Judgment (Doc. 72) is GRANTED in part and DENIED in part. Summary judgment shall enter in First Data's favor and against the Conservator on counts two and three of the Conservator's Counterclaim for rescission and for unjust enrichment. The Motion for Summary Judgment is DENIED in all other respects.

This matter shall be set for a pretrial conference and trial setting by separate Minute Order. Should either side desire a referral to a different magistrate judge for settlement, they should contact chambers and one will be issued.

BY THE COURT:

Dated July 20, 2007.    *s/John L. Kane*
                         SENIOR U.S. DISTRICT JUDGE

7